910 A.2d 1145

JANICE M.

v.

MARGARET K.

No. 01, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Nov. 3, 2006.

Cynthia Young, Annapolis (Stephen A. Drazin, on brief, Columbia), for appellant.

Jennifer S. Fairfax (Scott M. Strickler, Strickler, Sachitano & Hatfield, P.A., on brief), Bethesda, for appellee.

Panel MURPHY, C.J., JAMES R., EYLER, PAUL E., ALPERT, (Retired, specially assigned), JJ.

MURPHY, C.J.

In this appeal from the Circuit Court for Baltimore County,[1] we (1) reaffirm our holding that "a non-biological, non-adoptive parent, . . . [who] is a de facto parent, . . . is not required to show unfitness of the biological parent or exceptional circumstances . . . [to be] entitled to visitation." *S.F. v. M.D.*, 132 Md.App. 99, 112, 751 A.2d 9 (2000); and (2) hold that the "fit parent/exceptional circumstances" standard applies to a custody dispute between the child's "legal" (i.e., natural and/or adoptive) parent and a "third party" found to be the child's *de facto* parent.

## Factual Background

On February 5, 2005, in the Circuit Court for Baltimore County, appellee/cross-appellant Margaret K. filed a verified COMPLAINT FOR CUSTODY AND OTHER RELIEF that included the following assertions:

3. The parties [Margaret K. and appellant/cross-appellee Janice M.] are not and have never been married to each other.

4. One child was adopted as a result of the parties' relationship, namely: Maya [M.] (hereafter "Maya"), born on January 8, 1999 and adopted from India by [Janice M.] in 2000. Maya is in the present care and custody of [Janice M.].

\* \* \*

6. The parties entered into a committed domestic relationship in 1987 and continued to reside together until the Fall of 2004.

\* \* \*

---

1. There are cases in which it is appropriate that this Court, on its own initiative, change the caption of a case out of concern for the parties' privacy. *See, e.g., Karen v. Christopher*, 163 Md.App. 250, 254 n. 1, 878 A.2d 646 (2005). As we are persuaded that the case at bar is such a case, we shall use the initials of the last names of the parties.

9. [Margaret K.] participated in the adoption process to the extent she was able to but was limited in some respects because of the international laws related to children being adopted by gay parents.

10. [Margaret K.] was present when Maya arrived in the United States and has acted as her parent ever since.

11. Upon Maya's arrival home, [Margaret K.] participated fully as Maya's parent, she fed, bathed, played with and cared for Maya.

12. Prior to the parties' separation, [Margaret K.] regularly cared for Maya, regularly picked her up from daycare/pre-school, and regularly spent time with her attending school field trips, choir practices and horse back riding practices and competitions, family vacations and other social functions.

13. [Margaret K.] has provided for Maya's needs including purchasing essential baby and children's products, food, toys and providing financial support for [Janice M.] to purchase necessities for Maya.

14. Since the separation [Janice M.] has significantly, arbitrarily and unreasonably limited [Margaret K.] in her ability to participate in activities with Maya. . . .

\* \* \*

16. On or about January 18th [of 2005, Janice M.] left several threatening phone messages on [Margaret K.'s] answering machine threatening to never allow her to see Maya again. [Janice M.] has placed Maya in the middle of this dispute and has not acted in Maya's best interest. . . .

\* \* \*

18. [Margaret] was listed as Maya's parent when she began daycare, however, [Janice] listed [Margaret] as Maya's "godparent" when Maya entered kindergarten this past fall.

\* \* \*

20. [Margaret] and Maya have a parent-child bond that is being adversely affected by [Janice's] actions.

21. [Janice] consented to the relationship between Maya and [Margaret].

22. [Janice] has consented to and fostered the relationship between Maya and [Margaret].

\*　　\*　　\*

26. [Margaret] is Maya's de facto parent.

27. It is in Maya's best interest that custody of her be granted to [Margaret].

\*　　\*　　\*

29. It is in Maya's best interest that [Margaret] have an established schedule of visitation with her.

On April 26, 2005, Margaret filed a VERIFIED EMERGENCY MOTION FOR VISITATION WITH MINOR CHILD that included the following assertions:

1. The parties in this action were in a romantic relationship for 17 years during which [Janice] adopted their daughter, Maya, from India in 1999. Neither party to this action is Maya's birth mother and, although [Janice] was the child's adoptive parent for reasons related to international adoption laws and preferences, the parties have at all times raised Maya as co-parents.

\*　　\*　　\*

10. [Janice] and Maya always referred to [Margaret] as Maya's parent. Attached as Exhibit E and incorporated here by reference are a few cards from Maya and [Janice] regarding [Margaret's] role as Maya's parent. These cards overwhelmingly establish through [Janice] herself, the parent-child bond and relationship between [Margaret] and Maya. Specifically, [Janice] states in one card, "I love you & I thank God every day you are my partner & Maya's **mom** [emphasis in original]." Some cards are from Maya written by [Janice] where Maya refers to [Margaret] as her "bhati" and the cards are wishing her a happy mother's day and are Mommy

birthday cards from Maya. In addition, [Janice] and Maya gave [Margaret] a Mother's Day letter attached as part of this exhibit wherein [Janice] thanks [Margaret] for "taking on such a load of responsibility for Maya, the house and me" and for "all the emotional, physical and financial support you give freely." Maya, through [Janice's] writings, thanks [Margaret] for "fully focusing on my needs first-always" and for "picking me up and hugging me on demand."

\* \* \*

12. The unjustifiable denial of all access between Maya and [Margaret] is harmful to Maya. It is not in Maya's best interest to be denied all access to one of her mothers.

13. Maryland law allows de facto parents to obtain visitation in cases such as this one. To determine if a person is a de facto parent, the Maryland courts rely on the test set forth in *S.F. v. M.D.*, 132 Md.App. 99, 751 A.2d 9 (2000) which was derived from *In re Custody of H.S.H.-K.*, 193 Wis.2d 649, 533 N.W.2d 419 (1995), and *V.C. v. M.J.B.*, 163 N.J. 200, 748 A.2d 539 (2000). The test requires that "the legal parent must consent to and foster the relationship between the third party and the child; the third party must be have lived with the child; the third party must perform parental functions for the child to a significant degree; and most importantly, a parent-child bond must be forged." *S.F. v. M.D.*, 132 Md.App. at 111, 751 A.2d 9. Margaret [K.] meets the requirements of a de facto parent and therefore is entitled to visitation with her de facto daughter.

After the parties filed many more motions than were necessary,[2] the circuit court held an evidentiary hearing on the merits of Margaret's requests for custody and visitation. At

---

**2.** Motions to Compel Discovery, Motions for Immediate Sanctions, Motions to Shorten Time, Emergency Motions to Stay, etc., etc., etc.

the conclusion of that hearing, Margaret's counsel delivered a closing argument that included the following assertions:

The law does not give [Janice M.] in this situation the unfettered right to say somebody who lived with Maya every single day that she was in this country until August of 2004 suddenly is out of her life. Let's not miss the fact that whether [Janice M.] is a biological parent, a natural parent, an adoptive parent, this is not a situation as in many of these cases where somebody has a child or adopts a child and then takes on a partner, a spouse, a domestic partner, and you have a bond that was created between the biological mother and the child.

This is a case where regardless of who legally is the mother, both of these parties cared for and were with Maya everyday from the moment she came to this country at the end of 1999 until 2004. Other than the decree of adoption and the unquestionable fact that [Janice M.] was the adoptive parent, Maya was with Janice [M.]-I didn't butcher it until now. Maya was with Margaret [K.] every day of her life in this country until August of 2004.

... The only reason that Margaret [K.] has been deprived of the opportunity to have a relationship with her daughter is because she wasn't on that decree of adoption. You have basically a scorned partner after a 15, 16, 17 year relationship who says, I'm going to get back at my partner. The hell with my child! I don't care that she had a relationship with my child and made her breakfast every morning. Something that was not refuted. Made her dinner every evening. Picked her up from school every single day. My kid be damned! I'm hurt. This woman does not have a relationship with my child.

\*     \*     \*

Basically, everything that the testimony showed was that this relationship was no different than any committed relationship; be that, two, same sex partners, two heterosexual unmarried partners or an old married couple. I don't mean

to offend anybody, but in the sense of old married people together for 17 years.

They were together for an extended period of time and whatever precursors there may have been to have a child together, to raise that child together, and the fact that this relationship broke up is not a reason why the relationship between Maya and Margaret [K.] should be severed.

From the conflicting evidence presented at the hearing, the circuit court was not clearly erroneous in accepting that argument.

At the conclusion of Margaret's case-in-chief, the circuit court granted Janice's "motion for judgment" on the issue of custody,[3] stating:

I find that whatever rights [Janice M.] has as a natural parent she would have as a adoptive parent.

\* \* \*

... [I]n this case where you have a disputed custody case between a third-party and a biological parent, a natural parent of the child, the presumption is in favor of custody in the biological parent.

This presumption exists. It can be rebutted by a finding of a lack of fitness on the biological parent's part or the existence of extraordinary circumstances which are significantly detrimental to the child remaining in the custody of the biological parent or parents.

At this stage in the proceedings the court has to look at all evidence—all inferences of the evidence in the light most favorable to the non-moving party, who would be the plaintiff. Even looking at this in the light most favorable to the plaintiff, there's no evidence as to lack of fitness on the part of the defendant. So that prong is not satisfied.

---

**3.** Md. Rule 2–519(b), in pertinent part, provides that "[w]hen a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence."

... *Karen P. v. Christopher J.B.* at 163 Md.App. 250, 878 A.2d 646[ (2005)], I think that case can be distinguished from the facts of this case. In that case the biological parent abruptly removed the child from the State of Maryland making it almost impossible for the person seeking custody, Christopher in that case, to communicate with them. The biological parent did not allow the child to see Christopher except infrequently with restrictions, including that visitation had to be in her presence.

Basically, in that case the court found that the biological parent through a pattern of immaturity and selfishness in an effort to elevate her own personal interests took actions which actually rendered the child fatherless to break the bond totally between the father and the child.

\* \* \*

... I don't see where the facts of this case rise to the level of extraordinary, exceptional or compelling circumstances or even close. So I'm going to grant the motion as to custody, and we'll proceed on the visitation issues.

At the conclusion of all the evidence, the circuit court delivered an on-the-record opinion that included the following findings and conclusions:

Under the case of *S.F. v. M.D.*[, 132 Md.App. 99, 751 A.2d 9 (2000)], since we're dealing strictly with visitation right now, having already dismissed the issue of custody at the end of [Margaret K.'s] case, I find that [Margaret K.] is a de facto parent under that case.

The four factors are met. The first one being, did the legal parent consent to and foster the relationship between the third-party and the child? Clearly, I believe [Janice M.] did do that.

There's no question that the second prong is met. The third-party must have lived with the child. [Margaret K.] lived with the child for about three and a half years I believe it was.

The third factor, the third party must perform parental functions for the child to a significant degree. I think that's

very clear from all the testimony. Plus, it's clear from a lot of exhibits, the cards and the letters—I mean, the e-mails and so forth. I don't think it's much in dispute, or, if it's in dispute, I'm finding that [Margaret K.] did perform parental functions for the child to a significant degree.

And then the fourth factor, which the case says is the most important, is there a parent-child bond that had been forged? I think the evidence is clear that that's occurred as well. In fact, in [Margaret K.'s] No. 10, the letter from Janice [M.] dated October 6th of '04, she says in here, I know that she, meaning Maya, cares about you, et cetera, et cetera. She acknowledges the fact that the child cares about [Margaret K.].

\*　　\*　　\*

So I find that [Margaret K.] is a de facto parent. Having found that in the context of visitation, there then is no presumption in favor of the biological parent, or here, the adoptive parent.

So then you look at the best interests of the child, and the court finds as a matter of fact that it is in the best interests of the child that there be visitation with [Margaret K.]. It was not only her testimony, but it was also the testimony of the other witnesses that there is this relationship, and I'm finding that it would be detrimental that it be cut off totally.

That's not to say that [Janice M.] is not fit. I think both of these people are fit to be—would be fit to be custodians of Maya.

Neither party was entirely satisfied with the rulings of the circuit court. In support of her argument that Margaret K. is not entitled to visitation, Janice M. presents four questions for our review:

I. DID THE TRIAL COURT ERR IN HOLDING THAT MARGARET [K.] WAS A *DE FACTO* PARENT WITH STANDING TO SEEK VISITATION WITH JANICE [M.]'S DAUGHTER, MAYA [M.]?

II. WAS THE TRIAL COURT'S DECISION UNCONSTITUTIONAL BECAUSE IT FAILED TO GIVE

DEFERENCE TO [JANICE M.]'S DECISION RE-
GARDING VISITATION BETWEEN HER DAUGH-
TER AND A THIRD PARTY?

III. DID THE TRIAL COURT ERR IN AWARDING
VISITATION TO A THIRD PARTY OVER THE
OBJECTIONS OF A FIT CUSTODIAL PARENT IN
THE ABSENCE OF EXCEPTIONAL CIRCUM-
STANCES?

IV. DID THE TRIAL COURT ERR IN ORDERING A
SCHEDULE OF VISITATION THAT IS CON-
TRARY TO MAYA'S BEST INTERESTS AND NOT
SUPPORTED BY THE EVIDENCE?

In support of her argument that the circuit court erroneous-
ly granted Janice M.'s motion for judgment on the issue of
custody, Margaret K. also presents us with four questions:

I. Was the trial court's finding that Margaret [K.] is a de
facto parent supported by the record?

II. Was the trial court's determination that awarding visi-
tation to Margaret [K.] is in the best interest of the
child supported by the record?

III. If the trial court's award of visitation to a *de facto*
parent consistent with constitutional requirements?

IV. Did the trial court fail to apply the correct legal
standard for determining whether exceptional circum-
stances exist to support an award of custody to Marga-
ret [K.]?

For the reasons that follow, we shall (1) affirm the order
granting Margaret K.'s request for visitation, and (2) affirm
the judgment granting Janice M.'s motion for judgment on the
issue of custody.

### *De Facto* Parenthood

■ In *S.F. v. M.D.*, 132 Md.App. 99, 751 A.2d 9 (2000),
Judge James Eyler stated for this Court:

In determining whether one is a de facto parent, we employ
the test enunciated in *In re Custody of H.S.H.-K.*, 193

Wis.2d 649, 533 N.W.2d 419 (1995), and *V.C. v. M.J.B.*, 163 N.J. 200, 748 A.2d 539 (2000). Under that test, "the legal parent must consent to and foster the relationship between the third party and the child; the third party must have lived with the child; the third party must perform parental functions for the child to a significant degree; and most important, a parent-child bond must be forged." ... Consequently, ... a non-biological, non-adoptive parent, ... [who] is a de facto parent, ... is not required to show unfitness of the biological parent or exceptional circumstances ... [to be] entitled to visitation.

*Id.* at 111–12, 751 A.2d 9.

■ The person who claims to be a child's *de facto* parent must successfully shoulder the burdens of (1) pleading, (2) production of evidence, and (3) persuasion. We can take judicial notice that in almost every home occupied by adults and children, the adults perform *some* parental functions on behalf of the children. Under the above quoted test, however, a person who performed parental functions is not entitled to *de facto* parent status unless the court finds as a fact that the child's legal parent has actually fostered such a relationship. Because the test we adopted in *S.F. v. M.D., supra*, is a strict one, neither our holding in that case nor our holding in the case at bar will open the floodgates to claims of *de facto* parenthood asserted by persons who can prove nothing more than that, while living with the natural or adoptive parent of a child, they performed some parental functions on behalf of the child.

Rare are the cases like the case at bar, in which the circuit court was presented with evidence that (as summarized in the argument of Margaret K.'s counsel) "Maya was with Margaret [K.] every day of her life in this country until August of 2004[and][t]he only reason that Margaret [K.] has been deprived of the opportunity to have a relationship with her daughter is because she wasn't on that decree of adoption." Under these circumstances, there is no merit in Janice M.'s argument that the evidence presented to the circuit court was

insufficient to support the factual finding that Margaret K. is Maya's *de facto* parent.

## Conclusions

### A. Visitation

██ Janice M. argues that our holding in *S.F. v. M.D.* has been modified by *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), in which the United States Supreme Court addressed the constitutionality of a "grandparent visitation" statute. According to Janice M., because the evidence presented in the case at bar does not establish that judicial action is necessary "to prevent harm or potential harm to the child," the circuit court's visitation award constituted an unconstitutional interference with her fundamental right to make decisions concerning the care, custody, and control of Maya. We are persuaded, however, that *Troxel* did not modify *S.F. v. M.D.* We therefore hold that the circuit court neither erred nor abused its discretion in concluding that, because visitation with Margaret K. is in Maya's best interest, Margaret K. is entitled to visitation with her *de facto* daughter.

### B. Custody

██ In *McDermott v. Dougherty,* 385 Md. 320, 869 A.2d 751 (2005), the Court of Appeals stated:

In a [custody dispute] in which both parents seek custody, each parent proceeds in possession, so to speak, of a constitutionally-protected fundamental parental right. Neither parent has a superior claim to the exercise of this right to provide "care, custody, and control" of the children.... Effectively, then, each fit parent's constitutional right neutralizes the other parent's constitutional right, leaving, generally, the best interests of the child as the *sole standard* to apply to these types of custody decisions. Thus, in evaluating each parent's request for custody, the parents commence as presumptive equals and a trial court undertakes a balancing of each parent's relative merits to serve as the primary custodial parent; the child's best interests tips the

scale in favor of an award of custody to one parent or the other.

Where the dispute is between a fit parent and private third party, however, both parties do not begin on equal footing in respect to rights to "care, custody, and control" of the children. The parent is asserting a fundamental constitutional right. The third party is not. A private third party has no fundamental constitutional right to raise the children of others.

*Id.* at 353, 869 A.2d 751. The *McDermott* Court thereafter established the following standards for "third-party" custody disputes:

[I]n private custody actions involving private third-parties where the parents are fit, absent extraordinary (*i.e.* exceptional) circumstances, the constitutional right is the ultimate determinative factor; and only if the parents are unfit or extraordinary circumstances exist is the "best interests of the child" test to be considered[.]

*Id.* at 418–19, 869 A.2d 751.

■ Janice M. argues that *McDermott, supra,* prohibits an award of custody to the child's *de facto* parent unless the court finds either that (1) the child's legal parent is unfit, or (2) the custody dispute presents (in the words of the *McDermott* Court) "extraordinary (i.e. exceptional) circumstances." We agree with this argument, which is consistent with *Karen P. v. Christopher J.B.,* 163 Md.App. 250, 878 A.2d 646 (2005) in which Judge Deborah Eyler applied the "fit parent/exceptional circumstances" standard after reviewing all of the "reported Maryland custody cases in which the child, from the time of birth or infancy, grew up in a family unit with the biological mother and the third party occupying the role of father." *Id.* at 269, 878 A.2d 646. In each of those cases, which included *Monroe v. Monroe,* 329 Md. 758, 621 A.2d 898 (1993), "the third party occupied the role of a parent toward the child, and a parent/child bond developed between the third party and the child, while they both lived with the biological mother as a family unit." *Id.* at 274, 621 A.2d 898.

In *Monroe, supra,* the Court of Appeals held that the "exceptional circumstances" test was applicable to a custody dispute between the child's mother and "an acknowledged, though, in fact, non-biological, parent," stating:

> Prior to [the child's] birth, having been told, and after investigation, having come to believe, that she was his child, [the respondent] allowed his name to be placed on the birth certificate as her father and proceeded to act as her father. He was present in the delivery room when she was born and he lived with her and her mother ... both before and after he married her mother, from the time of [the child's] birth. He has, in short, treated the child as if she were his biological child from the time of her birth up to, and beyond, the determination that he is not.... Indeed, [the respondent] had joint custody with the petitioner. The evidence at the hearing further tended to prove that the child viewed the respondent as her father; she is bonded to him, and he to her.

\*       \*       \*

> From this evidence, a trier of fact could find, as the master did, exceptional circumstances. In any event, the issue is not one that can be resolved as a matter of law.

*Id.* at 776–77, 621 A.2d 898.

In the case at bar, the record shows that both parties lived with Maya from 1999 to September of 2004, when Margaret K. (in the words of her Motion for Visitation) "left the parties' home and moved into a two bedroom apartment 1.5 miles from the home so that she could visit regularly with Maya and have a place to sleep when Maya was with her." At this point, the parties agreed that Janice M. would be Maya's custodial parent, and that Margaret K. would have liberal visitation. Under these circumstances, the circuit court was not clearly erroneous in finding that Margaret K.'s evidence was insufficient (in the words of the *Monroe* Court) "to support [a] determination that exceptional circumstances existed in this case to rebut the presumption that [Maya's] best interest lay with being in the custody of her mother." *Id.* at 777, 621 A.2d

898.  We therefore affirm the denial of Margaret K.'s complaint for custody.

**JUDGMENTS AFFIRMED; EACH PARTY TO PAY 50% OF THE COSTS.**